UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEMETRIO HERNANDEZ,

                Petitioner,

        - against -

UNITED STATES OF AMERICA,

                Respondent.

**OPINION AND ORDER**

98 Cr. 0968 (ER)

Ramos, D.J.:

      Before the Court is Petitioner Demetrio Hernandez's Motion for Imposition of a Reduced Sentence pursuant to Section 404 of the First Step Act of 2018. Doc. 123. For the reasons set forth below, Hernandez's application is DENIED.

## I. BACKGROUND

      Hernandez was the leader of a drug-trafficking organization known as the "Hoe Avenue Enterprise." Presentence Report, "PSR" ¶¶ 18–19. Hernandez and his co-conspirators sold large quantities of crack cocaine in the Bronx, New York between about 1988 and October 1996. *Id.* ¶ 27. During the relevant period, the organization sold approximately one kilogram of crack every three to four weeks. *Id.* Hernandez himself distributed in excess of 1.5 kilograms of crack-cocaine. *Id.* The Hoe Avenue Enterprise also maintained and stored firearms. *Id.* ¶ 18. On multiple occasions, Hernandez coordinated shootings and killings against rival drug dealers in connection with the trafficking conspiracy. *Id.* ¶¶ 22–26. For example, in August 1993, Hernandez heard that drug dealers began selling crack cocaine nearby where his organization sold crack cocaine. *Id.* ¶ 23. As a result, Hernandez's drug sales declined. *Id.* In response, Hernandez hired and paid a member of his drug-trafficking organization to murder 16-year old

Kenny Ayala, a member of the competing organization.  The co-conspirator walked up to Ayala and shot him in the head, instantly killing him.  *Id.*  In July 1994, another drug dealer began selling crack cocaine near Hernandez's drug distribution location.  *Id.* ¶ 23.  In response, Hernandez hired two men and supplied them with guns to murder Enercido Pineda.  *Id.*  Pineda was shot and killed on July 17, 1994.  *Id.*  Again, in October 1994, Hernandez hired a member of his organization, Domenech Bonilla, to murder a drug-trafficking competitor.  *Id.* ¶ 24.  However, when Bonilla was unable to complete the murder, Hernandez believed Bonilla to be turning against him.  *Id.*  In response, On October 24, 1994, Hernandez personally attempted the murder of Bonilla.  *Id.* ¶ 25.  Bonilla survived but suffered severe injuries to his head and arm.  *Id.*  On June 1999, an Indictment was filed which contained seventeen counts, fourteen of which named Hernandez.

## II.   PLEA AND PROCEDURAL HISTORY

On September 17, 1999 Hernandez pleaded guilty to three counts:  (1) participating in a Racketeering Influenced and Corrupt Organizations Ave ("RICO") enterprise through racketeering acts of conspiracy to murder and conspiracy to distribute narcotics in violation of 18 U.S.C. §§ 1961, 1962(c), and 1962(d); (2) attempted murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5); and (3) conspiracy to assault in aid of racketeering in violation of 18 U.S.C. § 1959(a)(6).  On May 19, 2000, he was sentenced to 396 months' imprisonment.  Doc. 69.  Hernandez is currently serving his sentence in CI Moshannon Valley, Clearfield County, Pennsylvania.  On June 10, 2020, Hernandez submitted a letter to the warden seeking compassionate release on the basis of the COVID-19 pandemic.  Doc. 117 at 4.  His request was denied on June 11, 2020.  *Id.* at 2–6.  Hernandez did not appeal that decision.  Instead, he filed a

motion for compassionate release with the Court on June 25, 2020, *id.*, which the Court denied, Doc. 120.

On September 29, 2020, Hernandez filed the instant motion, arguing that he is eligible for a sentencing reduction pursuant to Section 404 of the First Step Act. Doc. 123. As a result, Hernandez argues that the Court should reduce his sentence to 240 months' imprisonment. *Id.*

### III.  DISCUSSION

"In general, a court 'may not modify a term of imprisonment once it has been imposed' subject to a few limited exceptions." *United States v. Aller*, --- F. Supp. 3d ----, 2020 WL 5494622, at *7 (S.D.N.Y. Sept. 11, 2020) (quoting 18 U.S.C. § 3582(C)); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010). A court may "modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute." 18 U.S.C. § 3582(C)(1)(B).

Before the Fair Sentencing Act was enacted, under Section 841(b)(1)(A), "an offense involving fifty grams or more of cocaine base triggered a sentence of at least ten years' imprisonment and up to life imprisonment." *United States v. Agostini*, 00 Crim. 237 (VM), 2020 WL 6136199, at *2 (S.D.N.Y. Oct. 19, 2020). Under Section 841(b)(1)(B), "an offense involving five grams or more of cocaine base resulted in a sentence of not less than five and not more than forty years' imprisonment[.]" *Id.* Likewise, under Section 841(b)(1)(C), a sentencing range of up to twenty years' imprisonment but no mandatory minimum applied to offenses involving less than five grams of cocaine base. 21 U.S.C. § 841(A).

In 2010, Congress passed the Fair Sentencing Act, which modified the statutory penalties for crack cocaine. *United States v. Martinez*, 04 Cr. 48–20 (JSR), 2019 WL 2433660, *1 (S.D.N.Y. Jun. 11, 2019) (citing PUB. L. NO. 111-220, 124 STAT. 2372); *see also United States v. Holloway*, 956 F.3d 660, 662 (2d Cir. 2020). Section 2 of the Fair Sentencing Act increased "the

threshold drug quantities that trigger penalty ranges for crack cocaine offenses" under 21 U.S.C. §§ 841(b)(1)(A) and 841(b)(1)(B). *Aller*, 2020 WL 5494622, at *11. Specifically, "Section 2 of the Fair Sentencing Act increased the threshold quantity for a conviction under § 841(b)(1)(A) from 50 to 280 grams of crack cocaine and increased the threshold quantity for a conviction under § 841(b)(1)(B) from 5 to 28 grams of crack cocaine." *Id.* Section 3 of the Fair Sentencing Act eliminated the mandatory minimum sentence for simple possession of crack cocaine under 21 U.S.C. § 841(a). However, the Fair Sentencing Act did not retroactively apply to defendants who had been sentenced before the Act's enactment. *See Holloway*, 956 F. 3d at 662; *Dorsey v. United States*, 567 U.S. 260, 264 (2012).

Passed in 2018, "[t]he First Step Act made the Fair Sentencing Act retroactive by providing that 'a court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed.'" *Aller*, 2020 WL 5494622, at *12 (citing PUB. L. NO. 115-391, § 404(b), 132 STAT. 5194, 5222). The First Step Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 that was committed before August 3, 2010." PUB. L. NO. 115–391, § 404(B), 132 STAT. 5222. The Second Circuit has concluded that a "covered offense" within the meaning of the First Step Act turns on "the statute under which a defendant was convicted, not the defendant's actual conduct." *United States v. Davis*, 961 F.3d 181, 187 (2d Cir. 2020).

At issue is whether Hernandez was convicted for a "covered offense" under the Fair Sentencing Act, thus making him eligible for release under the statute.

Hernandez argues that he is entitled to a sentence reduction because one of the three predicate acts in Count One involved the distribution of 50 grams of crack cocaine. Doc. 123 at 3. Because of these charges, Hernandez states that the indictment triggered a 10-year mandatory minimum. *Id.*; 21 U.S.C. § 841(b)(1)(A). Meanwhile, under the Fair Sentencing Act, Hernandez's conviction for 50 grams of crack should have only triggered a 5-year mandatory minimum. Doc. 123 at 3; 21 U.S.C. § 841(b)(1)(B). Hernandez is wrong that he was charged and sentenced under 21 U.S.C. § 841(b)(1)(A); the Superseding Indictment clearly states that the offense was charged under 21 U.S.C. § 841(b)(1)(C). Doc. 108–2 ¶ 9. However, this does not end the analysis.

In response, the Government argues that Hernandez's convictions are governed by sentencing provisions 18 U.S.C. §§ 1963(a), 1959(a)(5), and 1959(a)(6), and none of these are "covered offenses" under the Fair Sentencing Act. Doc. 125 at 5. Specifically, the Government argues that Hernandez's conviction on the racketeering conspiracy, Count One, is not a "covered offense" because, although the crime contained a predicate act involving the distribution of crack cocaine, the offense was charged under section 841(b)(1)(C), which carry no mandatory minimum sentence and which did not affect the minimum sentencing provisions of 18 U.S.C. § 1963(a). *Id.* The Government argues that, unlike Section 841(b)(1)(A) and 841(b)(1)(B), Section 841(b)(1)(C) was not modified by the Fair Sentencing Act. *Id.* For the reasons set forth below, the Court concludes that the Government too is wrong, but again, this does not end the analysis.

The Second Circuit has not yet determined whether an offense charged under Section 841(b)(1)(C) is a "covered offense" for the purposes of the First Step Act, and district courts in this Circuit remain divided on the issue. *See Aller*, 2020 WL 5494622, at *12 (concluding that §

841(b)(1)(C) is a "covered offense"); *United States v. Jennings*, 5 Crim. 6128 (CJS), 2020 WL 4390699, at *5 (W.D.N.Y. Jul. 31, 2020) (concluding that § 841(b)(1)(C) is not a "covered offense"). Other circuits have considered this issue and reached different conclusions on whether a violation of § 841(b)(1)(C) is a "covered offense." *See United States v. Smith*, 954 F.3d 446, 449 (1st Cir. 2020) (concluding that a violation of Section 841(b)(1)(C) is a "covered offense"); *United States v. Woodson*, 962 F.3d 812, 817 (4th Cir. 2020) (same); *United States v. Birt*, 966 F.3d 257, 265 (3d Cir. 2020) (concluding that violation of Section 841(b)(1)(C) is not a "covered offense"); *United States v. Foley*, 798 F. App'x 534, 536 (11th Cir. 2020) (same); *United States v. Martinez*, 777 F. App'x 946, 947 (10th Cir. 2019) (same).

The Court finds the reasoning in *Smith* persuasive and concludes that section 841(b)(1)C) is a "covered offense." 954 F.3d at 449; *see also Aller*, 2020 WL 5494622, at *13 (applying the reasoning set out in *Smith*). In *Smith*, the court noted that subsection 841(b)(1)(C) applies to any 'case of a controlled substance . . . except as provided in [subsections 841(b)(1)(A) and 841(b)(1)(B)]," and reasoned that, "[s]ince § 841(b)(1)(C) is defined in part by what § 841(b)(1)(A) and § 841(b)(1)(B) do not cover, a modification to the latter subsections also modifies the former by incorporation." 954 F.3d at 450. "Thus, by increasing the drug weights to which the penalties in Subsections 841(b)(1)(A)(iii) and (B)(iii) applied, Congress also increased the crack cocaine weights to which Subsection 841(b)(1)(C) applied and thereby modified the statutory penalty for crack cocaine offenses in Subsection 841(b)(1)(C) in the same way that Congress modified the statutory penalties in Subsections 841(b)(1)(A)(iii) and (B)(iii)." *Woodson*, 962 F.3d at 816. As such, "[b]ecause a Section 841(b)(1)(C) crack cocaine offense would [now] cover conduct in which the jury found between zero and 28 grams of crack cocaine attributable to the defendant subsequent to the Fair Sentencing Act, the statutory penalties for

crack cocaine offenses provided in Section 841(b)(1)(C) were "modified" by the Fair Sentencing Act." *See Aller,* 2020 WL 5494622, at *13 (citing *Smith*, 954 F.3d at 450). Further, the First Circuit noted that "the statutory drug quantities 'likely have an anchoring effect on a sentencing judge's decision making," so the increase in the upper bound of the drug quantity from five to twenty-eight grams is significant "even for defendants guilty of distributing less than five grams of crack.'" *Agostini*, 2020 WL 6136199, at *3 (citing *Smith*, 954 F.3d at 450). Because of the anchoring effect, "even defendants sentenced for crack offenses under Section 841(b)(1)(C) prior to the Fair Sentence Act would have experienced the crack-to-cocaine sentencing disparities that the Fair Sentencing Act and the First Step Act were designed to soften." *Aller,* 2020 WL 5494622, at *14. Therefore, the Court concludes that section 841(b)(1)(C) is a "covered offense" pursuant to the First Step Act. Accordingly, Hernandez was convicted of a "covered offense," and is eligible for a reduction of sentence under Section 404 of the Fair Step Act.

Still, despite the fact that Hernandez's offenses were "covered offenses," the Court in its discretion denies Hernandez's motion. The First Step Act also provides that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." PUB. L. NO. 115–391, § 404(B). Relief under Section 404 is discretionary, "and a district judge may exercise that discretion to deny relief where appropriate." *Davis*, 961 F.3d at 191. When determining whether and to what extent to exercise its discretion under the First Step Act to reduce an eligible defendant's sentence, the courts have often revisited "the goals of punishment, deterrence, and rehabilitation given the extreme gravity of the crimes." *Agostini,* 2020 WL 6136199, at *4 (quotation omitted). In exercising its discretion, the Court must adequately explain its sentencing-modification decision to allow for meaningful appellate review. *See*

7

*United States v. Pena,* 767 F. App'x 48, 50 (2d Cir. 2019); *see also Chavez-Meza v. United States*, 138 S.Ct. 1959, 1963, 1965 (2018).

When Hernandez was sentenced, he had a lengthy criminal record.  Further, he was the leader of a highly dangerous drug-trafficking organization and directed the murders and shootings of three individuals.  Further, Hernandez's criminal history and characteristics weigh against a sentence reduction.  The parties stipulated that Hernandez has a Criminal History Category III that would warrant a life sentence under the Sentencing Guidelines.  Doc. 125 at 3.  Despite the Guidelines recommendation, Hernandez pleaded guilty to three counts that collectively had a maximum term of imprisonment of 33 years, to which he was imprisoned.  *Id.*  Although the Court has found that Hernandez is eligible for a reduction in sentence, the Court in its discretion denies Hernandez's motion.

### IV.    CONCLUSION

For the foregoing reasons, Hernandez's motion is DENIED.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 123.

It is SO ORDERED.

Dated:   November 30, 2020
         New York, New York

                                                          _____
                                                          Edgardo Ramos, U.S.D.J.