UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEMETRIO HERNANDEZ,

                Petitioner,

– against –

UNITED STATES OF AMERICA,

                Respondent.

**OPINION & ORDER**

15-cv-10093
98-cr-00968

RAMOS, D.J.:

        Before the Court are Demetrio Hernandez's motions for a reduction of sentence pursuant to 18 U.S.C. § 3582. Hernandez argues his sentence should be reduced pursuant to § 3582(c)(2), because of the retroactive application of Amendments 706, 750, and 782 to the Sentencing Guidelines, and § 3582(c)(1)(A), because of the extraordinary and compelling reasons presented. Docs. 128, 133, 134. For the following reasons, the motions are DENIED.

I.     BACKGROUND

    A. Underlying Facts

        The Court assumes familiarity with the underlying facts of this case, which were discussed in a prior opinion denying sentence reduction. *See generally Hernandez v. United States*, No. 98-cr-0968 (ER), 2020 WL 7022498, at *1 (S.D.N.Y. Nov. 30, 2020) (Doc. 127). The Court repeats the relevant details here for convenience.

        Hernandez was the leader of a drug-trafficking organization known as the "Hoe Avenue Enterprise." Presentence Investigation Report ("PSR"), ¶¶ 18, 19. Hernandez and his co-conspirators sold large quantities of crack cocaine in the Bronx, New York between 1988 and October 1996. *Id.* ¶ 27. During the relevant period, the organization sold approximately one kilogram of crack every three to four weeks. *Id.* Hernandez himself distributed crack-cocaine in excess of 1.5 kilograms. *Id.*

The Hoe Avenue Enterprise also used and stored firearms. *Id.* ¶ 18. On multiple occasions, Hernandez coordinated shootings and killings against rival drug dealers in connection with the trafficking conspiracy. *Id.* ¶¶ 22–26. For example, in August 1993, Hernandez heard that drug dealers began selling crack cocaine nearby where his organization sold crack cocaine. *Id.* ¶ 23. As a result, Hernandez's drug sales declined. *Id.* In response, Hernandez hired and paid a member of his organization to murder 16-year old Kenny Ayala, a member of the competing organization. *Id.* ¶ 22. The co-conspirator walked up to Ayala and shot him in the head, instantly killing him. *Id.*

In July 1994, another drug dealer began selling crack cocaine near Hernandez's drug distribution location. *Id.* ¶ 23. In response, Hernandez hired two men and supplied them with guns to murder Enercido Pineda. *Id.* Pineda was shot and killed on July 17, 1994. *Id.* Again, in October 1994, Hernandez hired a member of his organization, Domenech Bonilla, to murder a drug-trafficking competitor. *Id.* ¶ 24. However, when Bonilla was unable to complete the murder, Hernandez believed Bonilla had turned against him. *Id.* In response, on October 24, 1994, Hernandez personally attempted the murder of Bonilla. *Id.* ¶ 25. Bonilla survived but suffered severe injuries to his head and arm. *Id.*

On June 24, 1999, an indictment was filed which contained seventeen counts, fourteen of which named Hernandez. Doc. 30.

### B. Plea and Sentencing

On September 17, 1999, Hernandez pled guilty to three counts: (1) participating in a Racketeering Influenced and Corrupt Organizations enterprise through conspiracy to murder and distribute narcotics in violation of 18 U.S.C. §§ 1961, 1962(c), and 1962(d); (2) attempted murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5); and (3) conspiracy to assault in aid of racketeering in violation of 18 U.S.C. § 1959(a)(6). PSR ¶ 6.

The PSR calculated the applicable sentencing range as life imprisonment, based on a total offense level of 47 and a criminal history category of I.  *Id.* ¶¶ 77, 84, 115.  However, because the aggregate maximum penalty under the 3 counts of conviction was 33 years, the PSR recommended a sentence of 396 months (33 years).  *Id.* ¶ 115.

Hernandez's adjusted offense level of 47 was driven primarily by Count One, which had an offense level of 46, and which comprised three racketeering acts: conspiracy to murder an unidentified man, conspiracy to murder Enercido Pineda, and conspiracy to distribute in excess of 1.5 kilograms of crack cocaine.  Doc. 142 at 3.  After adding four levels for Hernandez's leadership role in the Enterprise and applying a three-level decrease for acceptance of responsibility, Hernandez's total offense level was 47.[1]  *Id.*

Sentencing was held on May 19, 2000.  Doc. 108-6 at 1.  The sentencing court accepted the findings of the PSR and imposed a sentence of 396 months' imprisonment.  *Id.* at 6.  Hernandez is currently serving this sentence at the Federal Correctional Institution in Memphis, Shelby County, Tennessee.  Doc. 140-1 at 1.

### C.  Procedural History

On September 29, 2020, Hernandez filed a motion for a reduction of sentence pursuant to § 404 of the First Step Act of 2018.  Doc. 123.  Finding that the nature of Hernandez's offenses as well as his criminal history weighed against a sentence reduction, the Court in its discretion denied the motion.  *Hernandez*, 2020 WL 7022498, at *4 (Doc. 127).

On November 28, 2022, Hernandez filed a motion for a reduction of sentence pursuant to §§ 3582(c)(1)(A) and (c)(2).  Doc. 128.  The government filed its opposition

---

[1] Counts Two and Three each carried an offense level of 32.  Doc. 142 at 3.  Because these Counts were more than nine levels less serious than Count One, they had no impact on the total offense level.  *Id.*; U.S.S.G. § 3D1.4.

on December 22, 2022, Doc. 130, and Hernandez filed his reply on January 24, 2023, Doc. 132.

Hernandez subsequently filed two additional motions for sentence reduction on February 7, 2023, Doc. 133, and June 7, 2024, Doc. 134.

The Court appointed counsel to assist Hernandez in connection with his pending motions on June 27, 2024.  Doc. 137.  Counsel thereafter adopted the pending February 7 and June 7, 2023 motions, and supplemented the filing with a progress report evidencing Hernandez's good behavior in prison. [2]  Docs. 140, 144; *see also* Doc. 140-1.

On September 24, 2024, the government filed its opposition to Hernandez's second and third motions for sentence reduction.  Doc. 142.

## II.    ANALYSIS

Although a court generally may not modify a sentence once it has been imposed, section 3582(c) establishes certain exceptions to this general rule "by giving courts the power to 'reduce' an otherwise final sentence in circumstances specified by the [Sentencing] Commission." *Dillon v. United States*, 560 U.S. 817, 825 (2010) (internal quotation marks omitted).

Hernandez believes such circumstances exist here and urges the Court to reduce his sentence pursuant to §§ 3582(c)(2) and (c)(1)(A).

### A.  Section 3582(c)(2)

"In the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a)."  18 U.S.C. § 3582(c)(2).

"The statute thus establishes a two-step inquiry." *Dillon*, 560 U.S. 826.  First, a court must determine if—all else held equal—the Sentencing Commission's amendment

---

[2] Counsel did not formally adopt the November 28, 2022 motion (Doc. 128).  Doc. 144.  Because it was fully briefed, the Court considers that motion here too.

4

has the effect of lowering the defendant's applicable sentencing range. *Id.* at 827 (citing USSG § 1B1.10(b)(1)). Second, a court must consider whether a sentence reduction would be consistent with the § 3553(a) factors. *Id.* Those factors include:

> the nature and circumstances of the offense; the history and characteristics of the defendant, including age, being a non-violent offender, and remorse; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; the affordance of adequate deterrence; and the protection of the public from further crimes of the defendant.

*United States v. Herbert*, No. 03-cr-00211 (SHS), 2024 WL 1931962, at *2 (S.D.N.Y. May 2, 2024) (citing § 3553(a)).

Hernandez argues he is eligible for a sentence reduction based on Amendments 706, 750, and 782 to the Sentencing Guidelines (the "Amendments"), which, pursuant to the First Step Act of 2018, retroactively lowered the offense level applicable to crimes involving the distribution of crack cocaine. Doc. 128 at 1; Doc. 133 at 1; *see also* Doc. 127 at 4. Pursuant to the Amendments, the base offense level for act three—conspiracy to distribute in excess of 1.5 kilograms of crack cocaine—would have been 32, rather than 38. Doc. 142 at 6 (citing U.S.S.G. § 2D1.1(c)(4)). Hernandez believes this qualifies him for a sentence reduction as "a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." § 3582(c)(2).

But the Amendments do not actually have the effect of lowering Hernandez's sentencing range. Doc. 142 at 5–6. Racketeering act three, conspiracy to distribute in excess of 1.5 kilograms of crack cocaine, the only act implicated by the Amendments, had little impact on the offense level calculations when Hernandez was sentenced. Even if act three of Count One carried an offense level of zero, the combined offense level for Count One would only drop one level pursuant to the Sentencing Guidelines' grouping analysis. *Id.* at 6; *see* U.S.S.G. §§ 3D1.1–1.4. After the addition of four points for leadership and the reduction of three points for accepting responsibility, Hernandez's total

5

offense level would be 46 instead of 47.  *Id.*  An offense level of 46 would still yield a sentencing range above the aggregate statutory maximum of 33 years.  *Id.*

Accordingly, Hernandez is ineligible for a reduction in sentence on this basis.

### B.  Section 3582(c)(1)(A)

A court may also reduce a defendant's sentence if it finds "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A)(i).  The Sentencing Commission has identified six circumstances that, alone or in combination, may constitute an extraordinary and compelling reason.  *See* U.S.S.G. § 1B1.13(b); *see also United States v. Morel*, No. 11-cr-1032-54 (PAE), 2024 WL 4751270, at *4 (S.D.N.Y. Nov. 12, 2024) ("The amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated.").  Two of the six potential circumstances are relevant here:  "medical circumstances of the defendant," and "unusually long sentence plus changes in law."  *Morel*, 2024 WL 4751270, at *4–*5.

First, a court may consider a defendant's medical condition if "[(1)] the defendant is housed at a correctional facility affected or at imminent risk of being affected by [] an ongoing outbreak of infectious disease[;] [(2)] due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease … ; and [(3)] such risk cannot be adequately mitigated in a timely manner."  U.S.S.G. § 1B1.13(b)(1)(D).

Second, "if a defendant received an unusually long sentence and has served at least 10 years of the term," courts may consider a "change in the law . . . but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed."  U.S.S.G. § 1B1.13(b)(6).

6

As with § 3582(c)(2), a court is only authorized to reduce the defendant's sentence if such a reduction is consistent with the § 3553(a) factors.  18 U.S.C. § 3582(c)(1)(A)(i).

Hernandez argues he qualifies for a sentence reduction pursuant to § 3582(c)(1)(A) because the "harsh conditions created for prisoners from the Coronavirus pandemic" constitute extraordinary and compelling reasons warranting a sentence reduction.  Doc. 128 at 8.  But the Government argues, and Hernandez does not contest, that a review of Hernandez's medical records reveals that "he does not suffer from any underlying health conditions that would place him at heightened risk if he contracts COVID-19."  Doc. 130 at 5.  Accordingly, the COVID-19 pandemic does not constitute an extraordinary and compelling reason justifying Hernandez's release.  *See* U.S.S.G. § 1B1.13(b)(1)(D)(ii) (identifying an extraordinary and compelling reason warranting release where "due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease").

Hernandez further contends that, in light of the Amendments, his sentence is "unusually long," thereby presenting an extraordinary and compelling reason warranting reduction.  Doc. 134 at 1.  But, as established above, Hernandez's sentencing range is unaffected by any amendment affecting narcotics offenses.  *See* Doc. 142 at 6.  Because Hernandez's post-Amendments sentencing range would be the same as when he was sentenced, it cannot be said that the Amendments constitute a "change in the law" that "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed."  U.S.S.G. § 1B1.13(b)(6).

The Court concludes that Hernandez has failed to show an "extraordinary and compelling reason" warranting a sentence reduction.

**III.   CONCLUSION**

For the foregoing reasons, Hernandez's motions are DENIED.  The Clerk of the Court is respectfully directed to terminate Docs. 128, 133, 134, 140, and 144.

It is SO ORDERED.

Dated:   April 8, 2025
         New York, New York

_____
EDGARDO RAMOS, U.S.D.J.
